MADELEINE M. LANDRIEU, Judge.
11 This appeal concerns a purely legal issue: the scope of an insurer’s duty to defend in a long latency disease case where the insurer’s occurrence-based policies were in effect for only a portion of the time span during which the plaintiffs’ alleged exposure occurred.
FACTS AND PROCEEDINGS BELOW
In 2006, two sets of plaintiffs (respectively referred to as the “Barbe plaintiffs” and the “Waguespack plaintiffs”) filed separate suits against American Sugar Refineries, Inc. (“American Sugar”) alleging that they had suffered occupational hearing loss from their exposure to industrial noise while working at the defendant’s Ar-abi, Louisiana refinery during various years ranging from 1941 to 2006.[1] These two suits were then consolidated in the trial court with the still pending Arcen-eaux action, a suit that had been filed in 1999 against Tate & Lyle North American Sugars, Inc. (T & L), the predecessor of American Sugar, by other |2claimants alleging occupational hearing loss as a result of exposure to noise at the same refinery. The present appeal concerns only the Barbe and Waguespack plaintiffs, not the Arceneaux plaintiffs, whose claims have been litigated extensively in the trial court, this court and the Louisiana Supreme Court. See: Arceneaux v. Amstar Corp., 2005-0177 (La.App. 4 Cir. 12/14/05), 921 So.2d 189 (hereinafter referred to as “Ar-ceneaux I ”); Arceneaux v. Amstar Corp., 2006-1592 (La.App, 4 Cir. 10/31/07), 969 So.2d 755 (hereinafter referred to as “Ar-ceneaux II”); and Arceneaux v. Amstar Corp., 2010-2329 (La.7/1/11), 66 So.3d 438 (hereinafter referred to as “Arceneaux III”).
On September 19, 2007, defendant American Sugar brought a third-party demand against Continental Casualty Company (“Continental”) alleging that Continental had issued certain policies that provided coverage for the plaintiffs’ claims during a portion of the time span cited in the plaintiffs’ petition. American Sugar further alleged that it had put Continental on notice of the litigation in June of 2006 and that Continental had breached its policies by failing to provide American Sugar *118 with a defense. Continental answered the third-party petition acknowledging it had issued eight occurrence-based' policies to American Sugar that were in effect from 1963 to 1978, but asserted as an affirmative defense that some of those policies (those in effect prior to 1975) contained an exclusion for claims made by employees of the insured. Continental did not provide a defense, but in March, 2008, offered to pay and began paying twenty-five percent (25%) of | ..¡American Sugar’s defense costs, reserving its right to dispute its obligation to pay and/or provide a defense in further proceedings.
On May 22, 2013, more than five years after filing its third-party demand, American Sugar brought a motion for partial summary judgment seeking reimbursement from Continental for 100% of the costs incurred by American Sugar in defending the litigation since its inception, as well as a declaration that Continental owed American Sugar a full defense going forward; American Sugar also sought attorney’s fees and statutory penalties for alleged bad faith on the part of Continental. The trial court heard the motion on August 30, 2013. At the conclusion of the hearing, the trial court ruled from the bench, granting the motion for partial summary judgment in part, finding that Continental was obliged to provide American Sugar a complete, one hundred percent (100%) defense going forward from the date of the ruling. The trial court denied the motion for summary judgment in all other respects, thus denying American Sugar’s claims for reimbursement of past defense costs, attorney’s fees and penalties for bad faith. The trial court did not give oral or written reasons for judgment. In its written judgment signed October 3, 2013, the trial court designated the judgment as final for purposes of immediate appeal pursuant to Louisiana Code of Civil Procedure article 1915 B.
Continental suspensively appeals the judgment, arguing that the trial court misinterpreted the law in long latency disease cases when it ordered Continental to provide a full defense to American Sugar despite the fact that Continental’s Impolicies covered only 26 months of the approximately 60-year time span during which the plaintiffs’ alleged exposure occurred.
ISSUE
Whether the trial court erred by ordering Continental to provide American Sugar with a full defense going forward in this litigation is purely an issue of law. The parties do not dispute the relevant facts. Continental argues that the trial court’s ruling ignores the current law with respect to long latency disease cases, as expressed by the Louisiana Supreme Court in Southern Silica of Louisiana, Inc. v. Louisiana Insurance Guaranty Ass’n, 2007-1680 (La.4/8/08), 979 So.2d 460. Continental contends that Southern Silica establishes that, in a long latency disease case, an insurer issuing an occurrence-based policy or policies in effect for only a portion of the alleged time of exposure is not obligated to provide its insured a full defense, but only to pay a pro-rata share of the defense costs based upon the allegations of the petition and the four corners of the insurer’s policy or policies. Continental argues that in this case, because it had policies without employee exclusions in effect for only 26 months (from Dec. 31, 1975 to March 1, 1978), its pro-rata share of defense costs is 4.3%.[2]
*119 Conversely, American Sugar argues that the trial court did not err by ordering Continental to provide a full defense because the insurer’s duty to defend under Louisiana law is no different in a long latency disease case than it is in any | ¿other case involving multiple insurers, each of which has a duty to provide a full defense if, based on the petition, any of the plaintiffs’ claims is covered by its policy-
STANDARD OF REVIEW
We review the granting of a motion for summary judgment de novo, using the identical criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Smitko v. Gulf South Shrimp, Inc., 2011-2566, p. 7 (La.7/2/12), 94 So.3d 750, 755. A motion for summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” Id.; La. C.C.P. art. 966.
In the present case, there are no relevant facts in dispute, and the issue is purely a legal one: the scope of Continental’s duty to defend under these circumstances. Whether a defendant owes a legal duty and the scope of that duty are questions of law. Haney v. Delta Petroleum Co., 99-0170, p. 4 (La.App. 4 Cir. 10/6/99), 748 So.2d 36, 38. Appellate review of a question of law is simply to determine whether the trial court’s decision was correct or incorrect. Watkins v. Lake Charles Mem’l Hosp., 2012-1320, p. 6 (La.App. 3 Cir. 4/17/13), 114 So.3d 503, 507, aff'd, 2013-1137 (La.3/25/14), 144 So.3d 944.
^DISCUSSION
The pertinent language of the Continental policies, which are substantially similar, is:
The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
A. bodily injury or
B. property damage
to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent....
In the present case, it is undisputed that Continental paid 25% of the defense costs subject to a reservation of rights. Assuming, however, that Continental’s coverage is limited to the 26-month period between December 31, 1975 and March 1, 1978,[3] as the Louisiana Supreme Court found in Ar-ceneaux III, the question we face is whether the trial court was correct in holding that Continental owes American Sugar a full defense going forward.[4]
The term “defend” is not defined in the policies. The Louisiana Supreme Court has held that the insurer’s contractual duty to defend suits brought against its insured “is determined by the allega *120 tions of the plaintiffs petition, with the insurer being obligated to provide a defense unless the petition unambiguously excludes coverage.” Steptore v. Masco Construction Co., Inc., 93-2064, p. 8 (La.8/18/94), 643 So.2d 1213, 1218 (citations omitted). Thus, the insurer’s duty to defend is generally broader than its obligation to provide coverage because the duty to defend arises whenever the pleadings “disclose even a possibility of liability under the policy.” Id. (citations omitted). As this court has stated:
The law is clear that not every allegation asserted by plaintiff must result in liability to the insured for the insurer to provide a defense. Once a complaint states one claim within the policy’s coverage, the insurer has a duty to accept defense of the entire lawsuit, even though other claims in the complaint fall outside the policy’s coverage.
Ellis v. Transcon. Ins. Co., 619 So.2d 1130, 1134 (La.App. 4 Cir.1993). As we explained further in Mossy Motors, Inc. v. Cameras Am., 2004-0726 (La.App. 4 Cir. 3/2/05), 898 So.2d 602:
The issue of whether a liability insurer has the duty to defend a civil action against its insured is determined by application of the “eight-corners rule,” under which an insurer must look to the “four corners” of the plaintiffs petition and the “four corners” of its policy to determine whether it owes that duty. Under this analysis, the factual allegations of the plaintiffs petition must be liberally interpreted to determine whether they set forth grounds which raise even the possibility of liability under the policy. In other words, the test is not whether the allegations unambiguously assert coverage, but rather whether they do not unambiguously exclude coverage. Similarly, even though a plaintiffs petition may allege numerous claims for which coverage is excluded under an insurer’s policy, a duty to defend may nonetheless exist if there is at least a single allegation in the petition under which coverage is not unambiguously excluded.
Id., p. 6, 898 So.2d at 606 (citations omitted).
In the present case, Continental suggests we depart from this established law. Continental argues that in long latency disease cases, the duty to defend is divisible; thus, if the insurer’s occurrence-based policy reflects coverage for only a portion of the years of exposure alleged in the plaintiffs petition, the insurer would only be obliged to provide a corresponding portion of the defense.
|sContinental first notes that long latency occupational disease cases are sui gen-eris in that a distinct body of jurisprudential law has been developed which applies solely to them. See, e.g., Cole v. Celotex Corp., 599 So.2d 1058 (La.1992). One principle already established in Louisiana law is that in a long latency disease case, the “occurrence” that triggers insurance coverage is the plaintiffs “exposui'e to harmful conditions within the policy period.” Cole, supra, 599 So.2d at 1076. In Cole, the Louisiana Supreme Court adopted this “exposure trigger” to determine what policies provided coverage for long latency asbestos claims. The exposure trigger is also applicable here, where the plaintiffs allege that continuous exposure to noise during the course of their employment at American Sugar’s refinery caused their hearing loss. Arceneaux II, 2006-1592, pp. 1-2, 969 So.2d at 760.
The second established principle relied upon by Continental is that, once the plaintiffs have alleged coverage under multiple policies in accordance with the exposure trigger, liability will be allocated among those policies on a pro rata basis. *121 Norfolk Southern Corp. v. California Union Ins. Co., 2002-0369 (La.App. 1 Cir. 9/12/03), 859 So.2d 167; Southern Silica, supra, pp. 5-6, 979 So.2d at 464-465. In Norfolk Southern, the First Circuit explained that the policy language, requiring that injury occur during the policy period, required a pro rata allocation, reasoning:
The exposure theory, upon which the Louisiana allocation approach is based, relies on the principle that an insurer will only be responsible within the terms of its policy for those damages arising out of the period the policy is in effect. In short, each insurer is responsible, up to the limits of its policy, for all damages emanating from occurrences taking place during the insurer’s policy period. All damages emanating from occurrences taking place outside the policy period are covered by the insurer on the risk at the time the occurrence |9took place.
Id., pp. 42-43, 859 So.2d at 198.
The First Circuit also stated that if the insured’s damages arose out of occurrences taking place during a period in which no insurer was on the risk, “the logical approach is to treat [the policyholder] as an insurer for that period and assign it a pro rata share.”. Id., p. 43, 859 So.2d at 198. This pro rata allocation of coverage in long latency disease eases was adopted by the Louisiana Supreme Court in Southern Silica, supra, and applied in Arceneaux III, supra.
We agree with Continental that Louisiana law utilizes this pro rata method of allocating liability and/or indemnity among insurance carriers in long latency occupational disease cases. However, an insurer’s duty to defend, which is at issue here, is not the same as its duty to indemnify (which is based upon the scope of coverage). See Steptore v. Masco Construction Co., Inc., supra, p. 8, 643 So.2d at 1218; Ellis v. Transcon. Ins. Co., supra, at 1134; Yount v. Malsano, 627 So.2d 148, 153 (La.1993).
The crux of Continental’s argument on appeal is that in Southern Silica, supra, the Louisiana Supreme Court went beyond the issue of indemnity and used the pro rata approach to allocate defense costs. Relying primarily upon Southern Silica, Continental thus contends that in a long latency disease case, the duty to defend should be prorated.
In that case, Southern Silica of Louisiana, Inc. filed suit seeking a declaration that the Louisiana Insurance Guaranty Association (“LIGA”) owed it indemnity and a defense costs in connection with 500 silicosis lawsuits that had been filed against Southern Silica. The claimants in those suits alleged injuries from exposure to silica dust between 1965 and 2003. Reliance Insurance Company lin(“Reliance”), which had issued policies covering Southern Silica for the years 1977 through 1982, had subsequently become insolvent. Other solvent insurance carriers that had policies covering the remaining years had defended the claims pursuant to a voluntary cost-sharing agreement. Southern Silica contended that LIGA was required to step into the shoes of the insolvent insurer, Reliance, by providing both indemnity and a défense under the Reliance policies. The primary issue in the case was the interpretation of La. R.S. 22:1386A, which establishes a procedure for collecting insurance benefits from the statutorily-created LIGA when one of multiple covering insurers has become insolvent. The statute requires that the insured first “exhaust all coverage provided by any other policy, including the right to a defense under the other policy, if the claim under the other policy arises from the same facts, injury or loss that gave rise to the covered claim against [LIGA]” before collecting from *122 LIGA. The issue faced by the Supreme Court was whether this statutory requirement meant that the solvent insurers had to absorb the insolvent insurer’s coverage obligation until their own policy limits were exhausted. The Supreme Court held that they did not. The Court held that LIGA was obliged to “step into the shoes” of the insolvent insurer by paying that insurer’s pro rata share of coverage, but only after all the other solvent insurance carriers had paid up to their policy limits. In so holding, the Court noted:
[Our] reading of the ... statute comports with Louisiana’s use of the significant exposure theory in long latency disease cases and its component, proration of insurance coverage. Even if the monetary limits of each policy is far in excess of the prorated share, there is no authority in the legislation for the courts to assess an insurer with an amount in excess of the prorated amount of the claimant’s damages, as would be necessary if the insurer were to “fill the gap” of the Reliance years.
2007-1680, pp. 12-13, 979 So.2d at 468-69.
In Although the opinion in Southern Silica contains no discussion of the duty to defend, the decree states, in pertinent part:
This court decrees that Southern Silica is entitled to indemnity for the years 1977 through 1982 from LIGA, but only after the pro rata shares of all insurers that provided coverage in the Louisiana suits against Southern Silica are determined by judgment or settlement. Because LIGA also owes Southern Silica a defense for the 1977-1982 time period, indemnification for defense costs borne by Southern Silica can be recovered from LIGA upon proper proof thereof
Id., pp. 13-14, 979 So.2d at 469 (emphasis added).
Seizing upon the language highlighted above, Continental argues that Southern Silica established a rule whereby the duty to defend in long latency disease cases is subject to pro rata allocation in the same way as is the duty to indemnify. In response, American Sugar argues that Southern Silica, which was based upon the interpretation of a specific statute applicable only to claims against LIGA, is factually and legally distinguishable from the present case. Additionally, American Sugar points out that in Arceneaux III, decided several years after Southern Silica, the Louisiana Supreme Court held that Continental, although responsible for only its prorated share of indemnity, was nevertheless held liable to American Sugar’s predecessor for 100% of its defense costs as a result of Continental’s failure to defend.
None of the cases cited by either party directly addresses the precise issue presented here. We have not found a Louisiana decision that directly considers whether an insurer’s duty to defend in a long latency disease case can be prorated.
We first discuss Arceneaux III. Continental’s duty to provide a full defense was not at issue in that case because Continental had voluntarily paid the full defense costs. When first notified of the claims filed against its insured, T & L, Continental defended the suit without a reservation of rights. Subsequently, | ^Continental withdrew its defense based upon a mistaken belief that all of its policies contained employee exclusions that precluded coverage for the plaintiffs’ claims. Then, according to the Supreme Court’s account:
On November 11, 2004, T & L submitted defense bills to Continental for the first time and, after reviewing the policies, Continental realized that there were in fact 26 months (from January 1976 to March 1978) when the employee exclu *123 sion was not in effect. Accordingly, Continental offered to pay its pro rata share of the defense bills, but the offer was rejected. After attempts to get other insurers to share in the costs of defense failed, Continental notified T & L that it would pay 100% of the defense costs and defend all of the claims going forward under a full reservation of rights. On April 6, 2005, Continental paid T & L $1,419,168.95, the full amount of reimbursement for defense costs to date, and paid the full cost of defense from that point forward.
Arceneaux III, supra, p. 4, 66 So.3d at 442-43.
The issue in Arceneaux III was not whether Continental’s duty to defend could be prorated, but whether Continental’s breach of its duty to defend constituted a waiver of its coverage defenses, including the policy periods and the employee exclusions. Id., p. 17, 66 So.3d at 450. The Supreme Court held that Continental’s breach was not knowing, and therefore could not have resulted in a waiver of its right to assert its policy defenses. The Court did not face the question presented here: Would Continental’s duty to defend have been satisfied by its provision of a partial defense (based upon the extent of its liability) to its insured? Nevertheless, in finding that a breach occurred, the Supreme Court’s language suggests that a partial defense would not have sufficed:
Here, the petitions allege bodily injury from noise exposure for a wide range of years, from 1947 to 1994, some of which falls within the time the employee exclusions were not in effect. Therefore, the petitions do not unambiguously exclude coverage and Continental breached its duty to defend by withdrawing its defense in June 2003.

Id.

11sTurning to Southern Silica, the case upon which Continental primarily relies, we recognize that the decree in that case seems to indicate that the jurisprudence is moving in the direction of proration of the duty to defend. However, we agree with the appellee that Southern Silica is fundamentally distinguishable from the present case. Southern Silica is, first and foremost, a case addressing the interpretation of a procedural statute governing LIGA, which operates under different rules than those that apply to private insurers. More importantly, the provision of a defense was not an issue in Southern Silica because the suit was already being defended by the solvent insurers under a voluntary cost sharing agreement; there was no reason for the Court to upset that arrangement. The Court’s decree requiring LIGA to reimburse Southern Silica for Reliance’s pro rata share of past defense costs, upon proof of such costs, promotes an equitable result. However, the issue presented in this appeal is the propriety of the trial court’s decision ordering Continental to provide American Sugar with a complete defense going forward in this litigation, not the reimbursement of past defense costs.[5] We therefore cannot accept Conti *124 nental’s argument that this one sentence forming part of the decree in Southern Silica, a case in which the duty to defend was not at issue, evidences a fundamental change in the law regarding the duty to defend in long latency disease cases.
|14We appreciate Continental’s argument that other jurisdictions have adopted pro-ration of the duty to defend in long latency disease cases as a more equitable system. See, e.g., Commercial Union Ins. Co. v. Sepco Corp., 918 F.2d 920, 922-25 (11th Cir.1990); Budd Co. v. Travelers Indem. Co., 820 F.2d 787, 790-91 (6th Cir.1987); Century Indem. Co. v. Liberty Mut. Ins. Co., 815 F.Supp.2d 508, 517-20 (D.R.I.2011); Fireman’s Fund Ins. Co. v. Ex-Cell-O Corp., 685 F.Supp. 621, 626 (E.D.Mich.1987); Security Ins. Co. v. Lumbermens Mut. Cas. Co., 264 Conn. 688, 713, 826 A.2d 107, 123 (Conn.2003). Should the Supreme Court decide to extend and/or clarify the law on this issue, the present case might present an opportunity to do so. In the absence of any such pronouncement, however, we conclude, after close analysis of the relevant Louisiana jurisprudence, that Continental’s duty to defend American Sugar going forward in this litigation is not subject to proration. Accordingly, we find no error in the trial court’s judgment granting in part American Sugar’s motion for partial summary judgment.
CONCLUSION
For the reasons stated, the judgment of the trial court is affirmed.
AFFIRMED.

. The Barbe suit was filed on January 17, 2006, and, as supplemented and amended, alleged that the plaintiffs had suffered occupational hearing loss due to noise exposure while employed at the refinery between 1946 and 2005. The Waguespack suit was filed on April 6, 2006, and, as amended, alleged that the plaintiffs had suffered occupational hearing loss due to noise exposure while employed at the refinery between 1941 and 2006.

. There is no dispute that the exclusion of "bodily injury to any employee of the insured arising out of and in the course of his employment by the injured,” which is contained in all 8 Continental policies, was deleted from the final policy (covering March 1, 1975 to March 1, 1978) by endorsement effective De *119 cember 1, 1975. See Arceneaux III, 2010-2329, p. 13, 66 So.3d at 448.

. Arceneaux III, 10-2329, pp. 19-25, 66 So.3d at 452-55. This issue of the extent of Continental’s coverage liability is not before us.

. American Sugar did not file an answer to the appeal nor contend in its appellee brief that the trial court erred by denying American Sugar’s motion for partial summary judgment insofar as it sought reimbursement of past defense costs, penalties and/or attorney’s fees.

. As stated previously, prior to the trial court’s decision on American Sugar’s motion for partial summary judgment, Continental was voluntarily paying 25% of American Sugar’s defense costs subject to a reservation of rights. The trial court held that Continental must provide American Sugar with a full defense going forward, but denied American Sugar’s motion insofar as it sought the remaining 75% of past defense costs. The trial court certified the entire judgment as final pursuant to La. C.C.P. art. 1915. American Sugar did not challenge the trial court's ruling on past defense costs in its appellee brief. More importantly, American Sugar did not file an answer to the appeal, which is required before this court could consider awarding any affirmative relief to the appel- *124 lee. See La. C.C.P. art. 2133. Therefore, this issue is not before us.