# Supreme Court of Louisiana

The Opinions handed down on the **7th day of September, 2016**, are as follows:

**BY HUGHES, J.**:

2015-C -0588       DANIEL   ARCENEAUX,   LOUIS   DAVEREDE,   JR.,   VIVES   LEMMON   AND
                   JULES  MENESSES,  ET  AL.  v.  AMSTAR  CORP.,  AMSTAR  SUGAR  CORP.,
                   TATE  AND  LYLE  NORTH  AMERICAN  SUGARS,  INC.,  AND  DOMINO  SUGAR
                   COMPANY,  ET  AL.  (Parish of St. Bernard)

                   We  reverse  the  trial  court's  grant  of  the  partial  summary
                   judgment  that  ordered  Continental  Casualty  Company  to  pay  for
                   American  Sugar's  complete  defense  going  forward  in  the  *Barbe and
                   Waguespack*  cases.   We  conclude  that  Continental  is  liable  for  its
                   pro  rata  share  of  defense  costs  based  on  its  policy  periods,
                   noting  its  contention  that  its  pro  rata  share  should  be
                   calculated  at  3.74%  of  the  total  in  *Barbe*  and  3.29%  in
                   *Waguespack*,  and  remand  to  the  trial  court  for  further  proceedings
                   consistent  with  the  foregoing. REVERSED AND REMANDED.

                   KNOLL, J., concurs and assigns reasons.
                   CRICHTON, J., additionally concurs and assigns reasons.

**SUPREME COURT OF LOUISIANA**

**NO. 2015-C-0588**

**DANIEL ARCENEAUX, LOUIS DAVEREDE, JR.,
VIVES LEMMON AND JULES MENESSES, ET AL.**

**VERSUS**

**AMSTAR CORP., AMSTAR SUGAR CORP.,
TATE AND LYLE NORTH AMERICAN SUGARS, INC.,
AND DOMINO SUGAR COMPANY, ET AL.**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FOURTH CIRCUIT, PARISH OF ST. BERNARD**

**HUGHES, J.**

This case concerns whether the duty to defend in long latency disease cases may be prorated between insurer and insured when occurrence-based policies provide coverage for only a portion of the time during which exposure occurred. Continental Casualty Company ("Continental") asserts that defense costs are to be prorated among insurers and the insured if there are periods of non-coverage. American Sugar Refining, Inc. ("American Sugar") asserts that the duty to defend as agreed upon in the policy provides for a complete defense so long as the duty to defend attaches, even if some claims fall outside of coverage. For the reasons set forth below, we hold that the duty to defend should be prorated in this case based upon policy language.

**Facts and Procedural History**

In the underlying *Arceneaux* suit, plaintiffs allege that they suffered hearing loss from exposure to unreasonably loud noise in the course of their work at

American Sugar's refinery in Arabi, Louisiana. Two sets of plaintiffs, the *Barbe* plaintiffs and the *Waguespack* plaintiffs, filed suit against American Sugar in 2006. These suits were consolidated with the *Arceneaux* action, which was filed in 1999 against American Sugar's predecessor, Tate & Lyle North American Sugars, Inc. The case at bar concerns only the *Barbe* and *Waguespack* plaintiffs, and not the *Arceneaux* plaintiffs whose claims have been litigated extensively in the trial court, the court of appeal, and the Louisiana Supreme Court. *See Arceneaux v. Amstar Corp.*, 2005-0177 (La. App. 4 Cir. 12/14/05), 921 So.2d 189 ("*Arceneaux I*"); *Arceneaux v. Amstar Corp.*, 2006-1592 (La. App. 4 Cir. 10/31/07), 969 So.2d 755, *writs denied,* 07-2486, 08-0053 (La. 3/24/08), 977 So.2d 952, 953 ("*Arceneaux II*"); and *Arceneaux v. Amstar Corp.*, 2010-2329 (La. 7/1/11), 66 So.3d 438 ("*Arceneaux III*").[1]

The plaintiffs, approximately 100 in number, allege that they worked at the refinery during various years ranging from 1941 to 2006.[2] Continental issued eight general liability policies in effect from March 1, 1963 to March 1, 1978. Each of the policies contained exclusions for bodily injury to employees of the insured arising out of the course and scope of employment. However, in the last policy, the exclusion was deleted by special endorsement effective December 31, 1975. Thus, there was coverage for bodily injury that occurred from December 31, 1975 through March 1, 1978, a period of twenty-six months. The parties agree that the

---

[1] In the previous *Arceneaux* decisions, whether defense costs could be prorated was not at issue. Initially, Continental was defending the insured without a reservation of rights. *Arceneaux III*, p. 2, 66 So.3d at 441. Continental then withdrew its defense under the mistaken belief that none of the policies it issued provided coverage. *Id*. at pp. 2-3, 442. Later, Continental agreed to pay 100% of the defense costs and to defend all of the claims going forward under a full reservation of rights. *Id*. at pp. 4, 442-43. In *Arceneaux III*, the issue was whether Continental waived its policy defenses, including the coverage periods and the employee exclusion, by breaching its duty to defend. p. 17, 66 So.3d at 450. This court held that Continental did not waive its policy defenses. *Id.*

[2] The *Barbe* suit was filed on January 17, 2006 and, as supplemented and amended, alleged that the plaintiffs had suffered occupational hearing loss due to noise exposure while employed at the refinery between 1946 and 2005. The *Waguespack* suit was filed on April 6, 2006 and, as amended, alleged that the plaintiffs had suffered occupational hearing loss due to noise exposure while employed at the refinery between 1941 and 2006.

*Barbe* and *Waguespack* actions trigger coverage. The relevant policy language provides:

> The company will pay on behalf of the insured all sums which the insured . . . shall become legally obligated to pay as damages because of
>
> > Y. bodily injury
> > Z. property damage
>
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent . . . .

The policy defines bodily injury as "bodily injury, sickness or disease sustained by any person which occurs *during the policy period*, including death at any time resulting therefrom." (Emphasis added.) The policy defines occurrence as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

American Sugar brought a third party demand against Continental on September 19, 2007, alleging that Continental had issued policies that provide coverage for the *Barbe* and *Waguespack* claims. Furthermore, American Sugar alleged that Continental had been put on notice of the litigation in June 2006 and that Continental breached its policy provisions by failing to provide a defense. American Sugar sought past defense costs, a complete defense going forward, and penalties and attorney fees. Continental agreed to pay 25% of the past and future defense costs, subject to a full reservation of rights.

On May 22, 2013, American Sugar filed a Motion for Partial Summary Judgment seeking a declaration that Continental owes a duty to defend, including a duty to provide American Sugar a complete defense, reimbursement of defense costs expended plus interest, statutory bad faith penalties, and attorney fees.

Without offering reasons, on October 3, 2013 the trial court granted American Sugar's request for a complete defense going forward, but denied the motion in all other respects, including the request for past defense costs. The trial court also designated the judgment as final for purposes of immediate appeal pursuant to Louisiana Code of Civil Procedure article 1915(B).

Continental took a suspensive appeal and argued that it should not be ordered to provide a complete defense given that its policies covered but twenty-six months of the approximately sixty-year exposure period alleged by the plaintiffs. The Fourth Circuit affirmed the trial court's ruling holding that an insurer's duty to defend is not subject to proration. *Arceneaux v. Amstar Corp.*, 2014-0271, p. 14 (La. App. 4 Cir. 2/25/15), 161 So.3d 115, 124. The court of appeal opined that an insurer's duty to defend arises when the pleadings disclose even a possibility of liability under the policy, even if some of the claims fall outside the policy's coverage. *Id.* at pp. 6-7, 119-20. The court of appeal determined that the jurisprudence did not support a deviation from the rule that the duty to defend is not divisible, even in long latency disease cases. *Id.* at p. 14, 123-24. The court of appeal did note, however, that other jurisdictions have adopted the "more equitable system" of defense cost proration, that the state's jurisprudence is "moving in the direction of proration," and that this case presents an opportunity for the supreme court to "extend and/or clarify the law on this issue." *Id.* at pp. 13-14, 123-24. Continental sought review with this court, which was granted. *Arceneaux v. Amstar Corp.*, 2015-0588 (La. 8/28/15), 174 So.3d 1157.[3]

---

[3] Before this court granted Continental's writ, we requested additional briefing on the effect and applicability of *Arrant v. Graphic Packaging International, Inc.* 2013-2878 (La. 5/5/15), 169 So.3d 296. *Arrant* was handed down while Continental's writ application was pending in this court. *Arrant* held that employees' gradual noise-induced hearing loss caused by exposure to hazardous levels of noise constituted an "occupational disease" within the meaning of the Workers' Compensation Act. Neither Continental nor American Sugar argued that *Arrant* foreclosed the need to decide the instant case as *Arrant* did not address the duty to defend issue at bar.

4

**Standard of Review**

Appellate courts apply a de novo standard of review in considering lower court rulings on summary judgment motions. Thus, we use the same criteria that govern the district court's consideration of whether summary judgment is appropriate. A court must grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law, pursuant to LSA-C.C.P. art. 966(B). Here, there are no genuine issues of material fact. This case thus presents a question of law.

**Law and Analysis**

At the outset, we must note that an insurer's duty to defend is distinct from its duty to indemnify. Generally, an insurer's obligation to defend suits filed against an insured is broader than its obligation to provide coverage for damage claims. *Elliott v. Cont'l Cas. Co.*, 2006-1505, p. 5 (La. 2/22/07), 949 So.2d 1247, 1250 (citing *Steptore v. Masco Const. Co.,* 93-2064, pp. 8-9 (La. 8/18/94), 643 So.2d 1213, 1218). The insurer's duty to defend is determined by the allegations of the plaintiff's petition, and the insurer is obligated to furnish a defense unless the petition unambiguously excludes coverage. *Steptore,* p. 8, 643 So.2d at 1218. If, assuming all allegations of the petition to be true, there would be both coverage under the policy and liability of the insured to the plaintiff, the insurer must defend regardless of the outcome of the suit. *Id*. In short, the duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy. *Id*. at pp. 8-9, 1218.

As to an insurer's duty to indemnify, liability is to be prorated among insurance carriers that were on the risk during periods of exposure to injurious conditions. *Norfolk S. Corp. v. California Union Ins. Co.*, 2002-0369, pp. 42-43

(La. App. 1 Cir. 9/12/03), 859 So.2d 167, 197-98, *writ denied*, 2003-2742 (La. 12/19/03), 861 So.2d 579; *see also Arceneaux*, p. 22, 66 So.3d at 453 ("*Arceneaux III*"). That indemnification is allocated pro rata is based in large part on Louisiana's adoption of the exposure theory in long latency disease cases. *Id.* at pp. 40-41, 197; *see also S. Silica of Louisiana, Inc. v. Louisiana Ins. Guar. Ass'n*, 2007-1680, p. 8 (La. 4/8/08), 979 So.2d 460, 466. Long latency occupational disease cases are *sui generis* in that a distinct body of jurisprudential law has been developed which applies solely to them. *See Cole v. Celotex Corp.*, 599 So.2d 1058 (La. 1992). Under the exposure theory, the "occurrence" that triggers coverage under an insurance policy is the plaintiff's exposure to harmful conditions within the policy period. *Id.* at 1076. Such a theory was adopted to establish when coverage was triggered in cases that involved diseases when there is a "lengthy temporal separation between the alleged tortious conduct and the appearance of injury." *S. Silica*, p. 6, 979 So.2d at 465. This approach is based on the concept that insurers may limit their liability to discrete and finite periods. *Norfolk S.*, p. 42-43, 859 So.2d at 198. As the *Norfolk Southern* court explained:

> The exposure theory, upon which the Louisiana allocation approach is based, relies on the principle that an insurer will only be responsible within the terms of its policy for those damages arising out of the period the policy is in effect. In short, each insurer is responsible, up to the limits of its policy, for all damages emanating from occurrences taking place during the insurer's policy period. All damages emanating from occurrences taking place outside the policy period are covered by the insurer on the risk at the time the occurrence took place.

*Id.* Further, in cases when claims arise out of occurrences that take place during a period in which no insurer is on the risk, a liable entity is assigned a pro rata share for purposes of indemnification. *Id.* at p. 43, 198.

While the aforementioned case law pertains to indemnification, there appears to be no Louisiana precedent on the precise issue the court is presented

6

with in this case, which is whether an insurer's duty to defend may be prorated among insurers and the insured during periods of self-insurance in long latency disease cases. Nationwide, two general approaches to allocation of defense costs in long latency disease cases have emerged: the pro rata allocation method and the joint and several allocation method. Under pro rata allocation, insurance carriers of triggered policies are responsible for a share of defense costs based at least in part on the period of time they are on the risk. Defense costs are divided among insurers, and if the insured has periods of non-coverage, the insured is responsible for its pro rata share. Under joint and several allocation, the insured selects one insurer that is on the risk and holds it liable for the entire loss up to the policy limits. The elected insurer then has the burden of collecting contribution from other insurers. Under this scheme, defense costs are divided only among the insurance carriers, even for periods during which there was no coverage in place. The most significant difference between joint and several allocation and pro rata allocation is the treatment of uninsured time periods. *Owens-Illinois, Inc. v. United Ins. Co.*, 650 A.2d 974, 989 (N.J. 1994).

A leading decision in applying joint and several allocation is *Keene Corp. v. Insurance Co. of North America*. 667 F.2d 1034 (D.C. Cir. 1981), *cert denied*, 455 U.S. 1007 (1982). In this case, manufacturer Keene Corporation sought declaratory judgment of the rights and obligations of insurers under comprehensive general liability policies, specifically to what extent each policy covered Keene's liability for asbestos-related diseases. *Id*. at 1038. The applicable insurance policies in *Keene* are substantially similar to the Continental policy at issue in this case.[4]

---

[4] The policies in *Keene* provided that "(t)he company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury . . . to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury . . . even if any of the allegations of the suit are groundless, false or fraudulent . . . ." *Keene*, 667 F.2d at 1039. The policies in *Keene* defined bodily injury as "bodily injury, sickness or disease sustained by any person," and defined occurrence as "an accident, including injurious exposure

The federal district court held that indemnification and defense costs should be prorated among the insurers according to the relative extent of exposure during their respective policy periods and that the insured was liable for its pro rata share during periods of non-coverage. *Id*. at 1039. The United States Court of Appeals for the District of Columbia Circuit reversed. *Id*. The appellate court in *Keene* adopted the continuous trigger theory in long latency disease cases, holding that each insurer on the risk between exposure to asbestos and manifestation of injury was liable to the insured, Keene Corporation. *Id*. at 1041.

Next, the court determined the extent of coverage for which each insurer was liable. The court noted that the policies provided that the insurer will pay on behalf of the insured "all sums" that the insured becomes legally obligated to pay as damages because of bodily injury during the policy period. *Id*. at 1047. The court reasoned that the policies issued to the insured relieved it of the risk of liability for latent injury of which the insured could not be aware when it purchased insurance. *Id*. The court continued:

> Keene did not expect, nor should it have expected, that its security was undermined by the existence of prior periods in which it was uninsured, and in which no known or knowable injury occurred. If, however, an insurer were obligated to pay only a pro-rata share of Keene's liability, as the district court held, those reasonable expectations would be violated. Keene's security would be contingent on the existence and validity of all the other applicable policies. Each policy, therefore, would fail to serve its function of relieving Keene of all risk of liability. The logical consequence of this is that the policies must require that once an insurer's coverage is triggered, the insurer is liable to Keene to the full extent of Keene's liability up to its policy's limits, but subject to 'other insurance' clauses.

*Id*. at 1047-48. The court noted that there is "nothing in the policies that provides for a reduction of the insurer's liability if an injury occurs only in part during a policy period" and that it had "no authority upon which to pretend that Keene also

_____

to conditions, which results, during the policy period, in bodily injury . . . neither expected nor intended from the standpoint of the insured." *Id.*

has a 'self-insurance' policy that is triggered for periods in which no other policy was purchased." *Id*. at 1048-49. The *Keene* court also held that only one policy's limits can apply to each injury and that Keene was not entitled to "stack" applicable policies' limits of liability. *Id*. at 1049.

As to allocation of liability, the court reasoned that in asbestos-related disease suits, it is likely that the coverage of more than one insurer will be triggered. *Id*. at 1050. The court stated:

> Because each insurer is fully liable, and because Keene cannot collect more than it owes in damages, the issue of dividing insurance obligations arises. The only logical resolution of this issue is for Keene to be able to collect from any insurer whose coverage is triggered, the full amount of indemnity that it is due, subject only to the provisions in the policies that govern the allocation of liability when more than one policy covers an injury.

*Id*.

Finally, the *Keene* court determined the insurers' liability for defense costs. It reasoned that because the policies provide that the insurer shall defend any suit against Keene for damages due to bodily injury, and because it held that each insurer is fully liable to Keene for indemnification, "it follows that each is fully liable for defense costs." *Id*. Thus, the reviewing court reversed the district court's judgment that held indemnification and defense costs are to be prorated, and it held that such costs should be allocated under the joint and several scheme.

Other jurisdictions have concluded differently, although dealing with essentially the same policy language. The seminal case applying the pro rata allocation method is *Insurance Co. of North America v. Forty-Eight Insulations, Inc*., 633 F.2d 1212 (6th Cir. 1980), *clarified on reh'g*, 657 F.2d 814 (6th Cir. 1981), *cert denied*, 454 U.S. 1109 (1981).

In *Forty-Eight Insulations*, the insurer sought a declaratory judgment to establish that the insured was responsible for a portion of its defense costs and liability for an asbestos action brought against it because it had been self-insured

for a period of time. *Id.* at 1215. The insured, Forty-Eight Insulations, Inc., claimed it had coverage for all the years in which exposure was alleged, but some of the policies had been lost or destroyed. *Id.* at n. 4. Faced with substantially similar insurance policies[5] to the policy in the instant matter and the argument that so long as one insurer had the duty to defend, the insured should not be liable for defense costs, even during periods of non-coverage, the United States Court of Appeals for the Sixth Circuit held that defense costs are to be prorated among insurers and the insured for periods of non-coverage. *Id.* at 1225. The court reasoned that when there is no reasonable means of prorating defense costs between covered and non-covered claims, the insurer must bear the entire cost of defense. *Id.* at 1224. The court noted this scenario typically arises in suits brought as the result of a single accident, when only some of the damages sought are covered under a policy. *Id.* However, in the context of asbestos exposure cases and other long latency disease claims when coverage was triggered under the exposure theory, defense costs can be "readily apportioned." *Id.* at 1224. The court further stated:

> The duty to defend arises solely under contract. An insurer contracts to pay the entire cost of defending a claim which has arisen within the policy period. The insurer has not contracted to pay defense costs for occurrences which took place outside the policy period.

*Id.* at 1224-25. In *Forty-Eight Insulations*, the court applied the exposure theory to indemnity liability, and stated that the exposure theory established that a reasonable means of proration was available in allocating defense costs. *Id.* at

---

[5] The policy language in *Forty-Eight Insulations* provided:

> [The insurer] will pay on behalf of the insured all sums which the insured shall be legally obligated to pay as damages because of . . . bodily injury or . . . property damage to which this policy applies caused by an occurrence.
> "Bodily injury" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom.
> "Occurrence" means an accident, including injurious exposure to conditions which results, during the policy period, in bodily injury . . . .

*Forty-Eight Insulations*, 633 F.2d at 1216.

1225.

As to allocating defense costs to an insured for periods of no coverage, the *Forty-Eight Insulations* court held that it was reasonable to treat the insured as an insurer for periods of time in which there was no triggered policy. *Id*. The court speculated that were the court to adopt a rule whereby once the duty to defend was triggered, an insured would be owed a full defense even if there were gaps in coverage, "a manufacturer which had insurance coverage for only one year out of 20 would be entitled to a complete defense of all asbestos actions the same as a manufacturer which had coverage for 20 years out of 20. Neither logic nor precedent support such a result." *Id*.

Another court that adopted the pro rata method of apportioning defense costs is the Supreme Court of New Jersey in *Owens-Illinois, Inc. v. United Insurance Co.* 650 A.2d 974. In detailing the public policy interests presented in its decision, the court wrote:

> The theory of insurance is that of transferring risks. Insurance companies accept risks from manufacturers and either retain the risks or spread the risks through reinsurance. John A. Appleman & Jean Appleman, 13A *Insurance Law and Practice* § 7681 (1976). Because insurance companies can spread costs throughout an industry and thus achieve cost efficiency, the law should, at a minimum, not provide disincentives to parties to acquire insurance when available to cover their risks. Spreading the risk is conceptually more efficient.

*Id*. at 992; s*ee also Sec. Ins. Co. of Hartford v. Lumbermens Mut. Cas. Co.*, 826 A.2d 107, 121 (Conn. 2003). Accordingly, the New Jersey high court rejected the *Keene* method of allocation as it reduces the incentive to insure against future risks and adopted the pro rata method of apportioning defense costs. *Owens-Illinois, Inc.*, 650 A.2d at 995-96.

Across the country in cases where "it has been determined that the insured is self-insured for part of the coverage period, the weight of authority is that the insured must bear a pro rata share of the defense costs." Barry R. Ostrager &

11

Thomas R. Newman, *Handbook on Insurance Coverage Disputes*, §6.02(a)(2) (17th ed. 2014).[6]

We are persuaded by the reasoning presented in *Forty-Eight Insulations* and its progeny and adopt the pro rata allocation method for defense costs in the case before us based on the policy language.

The duty to defend arises solely under contract. *Arceneaux*, p. 21, 66 So.3d at 452 ("*Arceneaux III*"). It is well-settled that "an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code." *Sims v. Mulhearn Funeral Home, Inc.*, 07-0054, p. 7 (La. 5/22/07), 956 So.2d 583, 588-89. According to those rules, it is the responsibility of the judiciary to determine the common intent of the parties. The ascertainment of that common intent begins with an examination of the words of the insurance contract itself. *Id*. In this case, the words of the insurance contract at issue are clear and unambiguous. According to the contract, Continental has "the right and duty to defend any suit against the insured seeking damages on account of . . . bodily injury." "Bodily injury" is defined as "bodily injury, sickness or disease sustained by any person which occurs *during the policy period*, including death at any time resulting therefrom." (Emphasis added.)

American Sugar argues that under the terms of the policy Continental must "defend" "any suit" that contains at least one allegation seeking damages that is potentially covered. However, the policy language limits coverage for bodily injury to that which occurs during the policy period.

---

[6] *See, e.g., Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365 (5th Cir. 1993); *Commercial Union Ins. Co. v. Sepco Corp.*, 918 F.2d 920 (11th Cir. 1990); *Budd Co. v. Travelers Indem. Co.*, 820 F.2d 787 (6th Cir. 1987); *Am. Med. Sys., Inc. v. Nat'l Union Fire Ins. Co.*, 98-1788, slip op. at 19-22, 1999 WL 679664, *11 (E.D. 1999) (Minnesota law); *Dow Chem. Co. v. Associated Indem. Corp.*, No. 85-CV-10037-BC, slip op. at 12-13, 1991 WL 568033 (E.D. Mich. Dec. 6, 1991); *Fireman's Fund Ins. Cos. v. Ex-Cell-O Corp.*, 685 F. Supp. 621, 626 (E.D. Mich. 1987); *N. States Power Co. v. Fid. & Cas. Co. of N.Y.*, 523 N.W.2d 657 (Minn. 1994).

Moreover, applying the pro rata method of allocation here does not violate the reasonable expectations of the insurer or the insured. Based on the policy language, neither party could reasonably expect that the insurer was liable for losses that occurred outside the policy coverage periods. *See Sec. Ins. Co. of Hartford*, 826 A.2d at 121 (Conn. 2003). While the duty to defend is broader than the duty to indemnify, neither obligation is broader than the policy's coverage period in the context of long latency disease cases that trigger occurrence-based policies. In addition, the concept of "joint and several" is not a concept that is currently a part of Louisiana's tort law. *See Milbert v. Answering Bureau, Inc.*, 13-002 (La. 6/28/13), 120 So.3d 678, 687-89; *see also Denoux v. Vessel Management Services, Inc.*, 07-2143 (La. 5/21/08), 983 So.2d 84, 92.

We note also that "subject to the rules on insurance contract interpretation, insurance companies have the right to limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy." *Edwards v. Daugherty*, 03-2103, 03-2104, p. 23 (La. 10/1/04), 883 So.2d 932, 947. Thus, the policy language in this case that supports a pro rata allocation of defense costs may not appear in another policy, requiring a different result with regard to responsibility for defense costs. The manner in which defense costs are to be allocated may need to be determined on a case by case basis, according to the precise language of the insurance contract at issue.

Additionally, as recognized by *Forty-Eight Insulations* and its progeny, the pro rata allocation scheme is an equitable system, that can be readily used in long latency disease claims in Louisiana. In *Cole,* this court adopted the exposure theory of liability as set out in *Forty-Eight Insulations*. *Cole*, 599 So.2d at 1076. The exposure theory, under which the occurrence that triggers coverage is the exposure to harmful conditions, provides a clear way to apportion defense costs as each year of alleged exposure will trigger the insurer's duty to defend. American

13

Sugar argues that proration of defense costs will result in mini-trials to determine the exposure periods for each plaintiff. However, because the duty to defend is determined by consulting the allegations within the petition and the terms of the insurance policy, no such mini-trials are necessary.

Here, American Sugar will be required to pay for its defense during years in which it did not acquire an insurance policy that would be triggered by the instant litigation. As noted by *Forty-Eight Insulations*, such a result is "reasonable" as the joint and several scheme would treat an insured who had uninterrupted policies for twenty years the same as an insured who had a triggered policy for one year. 633 F.2d at 1225. To hold otherwise would entitle an insured to receive coverage for a period in which it did not pay a premium. *See Owens-Illinois, Inc.*, 650 A.2d at 988 (citing *Uniroyal, Inc. v. Home Ins. Co.*, 707 F. Supp. 1368 (E.D.N.Y. 1988)). Moreover, the joint and several allocation approach provides a disincentive to insureds to purchase uninterrupted insurance coverage and provides a windfall to companies that fail to obtain continuous coverage. *See Sec. Inc. Co. of Hartford*, 826 A.2d at 121. The pro rata allocation method, by contrast, promotes risk spreading.

The decision to prorate defense costs in this case is buttressed by our decision in *Southern Silica of Louisiana, Inc. v. Louisiana Insurance Guaranty Ass'n.* 979 So.2d 460. In *Southern Silica*, an insured obtained policies through various insurers that were triggered by employees' alleged exposure to silica. *Id.* at p. 2, 462. One of the insurers, Reliance, was declared insolvent and the question became whether the solvent insurers must first absorb the insolvent insurer's share of indemnity and defense costs to the extent of their policy limits before the insured could claim indemnity and defense costs from the Louisiana Insurance Guaranty Association. *Id.* To answer the question, this court reviewed the lower court's determination that Act 108 of 2004 was unconstitutional on the basis that it

14

impaired the contract between insured and insurer. *Id*. at p. 3-4, 463. By 2004 La.

Acts, No. 108, § 1, R.S. 22:1386(A) was amended to provide:

> In the case of a claimant alleging personal injury or death caused by exposure to asbestos fibers or other claim resulting from exposure to, release of, or contamination from any environmental pollutant or contaminant, such claimant must first exhaust any and all other insurance available to the insured for said claim for any policy period for which insurance is available before recovering from the association, even if an insolvent insurer provided the only coverage for one or more policy periods of the alleged exposure.

Section 3 of Act 108 further provided that: "[t]his Act shall apply to all covered claims, as defined in R.S. 22:1379, pending or arising after the effective date of the Act."

While the court of appeal determined that there was an impairment of contract as the statute required the insured to assert its claims against the solvent insurers when there were no contracts in effect and where the insurers did not receive premiums, this court held that the statute could be read in such a way that it was not unconstitutional *Id*. at p. 10, 467. This court reasoned:

> The above provision merely states the order in which a claim must be handled. The claimant must "first" collect other insurance "available to the insured" before the claimant can collect from LIGA. What is "available" is the pro rata share of each insurer for each year that insurer was on the risk. Thus, the amendment provides a procedure for asserting a claim against LIGA: the claimant must "exhaust" the other solvent insurers' pro rata shares of his or her damages before asserting a claim against LIGA to pay Reliance's pro rata shares. This reading of the amended statute comports with Louisiana's use of the significant exposure theory in long latency disease cases and its component, proration of insurance coverage. Even if the monetary limits of each policy is far in excess of the prorated share, there is no authority in the legislation for the courts to assess an insurer with an amount in excess of the prorated amount of the claimant's damages, as would be necessary if the insurer were to "fill the gap" of the Reliance years.

*Id*. at p. 12, 468-69 (footnote omitted). We note that the decree in *Southern Silica*

stated in part: "Because LIGA also owes Southern Silica a defense for the 1977-

1982 time period, indemnification for defense costs borne by Southern Silica can

be recovered from LIGA upon proper proof thereof." *Id.* at p. 14, 469. The *Southern Silica* decision concerned itself with the interpretation and constitutionality of a statute, and it contains no recitation of law or analysis on the duty to defend. Yet, the holding in *Southern Silica* and the holding in the instant case appear to be consistent.

In contrast to *Southern Silica* is a Texas silicosis case that was similarly concerned with whether an insured must exhaust coverage from solvent insurers before the insurance guaranty association's duty to assume the obligations of an impaired insurer was triggered under the state's Guaranty Act.[7] *Texas Prop. & Cas. Ins. Guar. Ass'n/Sw. Aggregates, Inc. v. Sw. Aggregates, Inc.*, 982 S.W.2d 600, 602 (Tex. App. 1998). The court noted that Texas had adopted the joint and several allocation method in *Keene* and that each insurer is fully liable to the insured for defense costs. *Id.* at 605. The Texas court affirmed the trial court's holding that the Guaranty Act required an insured to exhaust its right to a complete defense under each policy with solvent insurers before the Guaranty Association's statutory obligations are triggered. *Id.* at 616. The difference in outcome in *Texas Property* and *Southern Silica* is underscored by the difference in how each jurisdiction has decided to allocate defense costs in long latency disease cases. When each insurer on the risk owes the insured a complete defense, such an insured cannot seek recovery from the insurance guaranty association until it exhausts other triggered policies. Where each insurer on the risk owes the insured a prorated share, an insured may assert a claim against the insurance guaranty

---

[7] The relevant portion of the Texas Guaranty Act, Tex. Ins. Code Ann. art. 21.28–C, § 12(a) (West Supp. 1998), stated in part:

> A person who has a claim against an insurer under any provision in an insurance policy other than a policy of an impaired insurer that is also a covered claim shall exhaust first the person's rights under the policy, including any claim for indemnity or medical benefits under any workers' compensation, health, disability, uninsured motorist, personal injury protection, medical payment, liability, or other policy, and the right to defense under the policy.

association for the insolvent insurer's pro rata shares after it recovers the pro rata shares from the solvent insurers. *See Sayre v. Ins. Co. of N. Am.,* 701 A.2d 1311, 1314 (N.J. Super. Ct. App. Div. 1997), s*uperseded by statute,* N.J.S.A. 17:30A-5, *as recognized in Farmers Mut. Fire Ins. Co. of Salem v. New Jersey Property-Liability Ins. Guar. Ass'n*, 74 A.3d 860 (N.J. 2013), (holding that the state's surplus lines guaranty fund must pay the share that would have been allocated to the insolvent insurer's policy up to the statutory limit because of the previous adoption of pro rata allocation method of indemnity and defense costs). Thus, while the issues presented in the case at bar differ from those presented in *Southern Silica*, the result reached in both is consistent.

Having concluded that defense costs are to be prorated in this case, we now determine the formula for allocation. Some courts take into consideration policy limits in conjunction with time on the risk. For example, in *Owens-Illinois*, the New Jersey Supreme Court determined that a special master should be appointed to create a formula for calculating indemnity and defense costs. 138 N.J. at 996. It instructed that a "fair method of allocation appears to be one that is related to both the time on the risk and the degree of risk assumed." *Id*. at 995. While the court left the ultimate formula up to the special master, it noted that to determine the risk assumed, policy limits and the years of coverage should be factors. *Id*. at 993-94. In *Sharon Steel Corp. v. Aetna Casualty & Surety Co.*, the Utah court concluded that multiplying policy limits by the years of coverage results in a more equitable allocation of defense costs than proration based on policy limits alone. 931 P.2d 127, 140 (Utah 1997). It noted that taking into account policy limits "affixes the responsibility of the insurer in proration to the total coverage which that insurer undertook to provide" and "acknowledges that insurers do not stand on an equal footing where there are significantly different liability limits." *Id.*

In this case, however, the amount of time an insurer was on the risk would

seem to be the appropriate consideration. Because the duty to defend is distinct from the duty to indemnify, the details of the policy need not enter the equation of how defense costs are to be allocated so long as the policy is triggered. Additionally, in this case there are periods where there is no policy in effect and thus where there are no policy limits. Thus, we conclude a time on the risk assessment is appropriate in this case. *See Forty-Eight Insulations*, 633 F.2d at 1225.

**Decree**

We reverse the trial court's grant of the partial summary judgment that ordered Continental Casualty Company to pay for American Sugar's complete defense going forward in the *Barbe* and *Waguespack* cases. We conclude that Continental is liable for its pro rata share of defense costs based on its policy periods, noting its contention that its pro rata share should be calculated at 3.74% of the total in *Barbe* and 3.29% in *Waguespack*, and remand to the trial court for further proceedings consistent with the foregoing.

**REVERSED AND REMANDED.**

SUPREME COURT OF LOUISIANA

No. 15-C-0588

DANIEL ARCENEAUX, LOUIS DAVEREDE, JR.,
VIVES LEMMON AND JULES MENESSES, ET AL.

VERSUS

AMSTAR CORP., AMSTAR SUGAR CORP.,
TATE AND LYLE NORTH AMERICAN SUGARS, INC.,
AND DOMINO SUGAR COMPANY, ET AL.

**KNOLL, J., concurs in the result.**

With all due respect, I concur in the result because I find the opinion tends to be confusing. In my view, the issue of whether Continental is entitled to a pro rata sharing of defense costs involves a pure contract question based on the terms of its insurance policy. The plain language of the insurance contract concerning the duty to defend provides:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
> A. **bodily injury** or
> B. property damage
>
> *to which this insurance applies*, caused by an occurrence, and the company shall have the right and duty to defend *any suit* against the Insured seeking damages *on account of such bodily injury* or property damage, even if any of the allegations of the suit are groundless, false or fraudulent....

Thus, Continental has an obligation to pay damages because of "bodily injury . . . to which this insurance applies" and to defend "any suit . . . on account of any such bodily injury." The policy defines "bodily injury" as "bodily injury, sickness, or disease sustained by any person *which occurs during the policy period*, including death at any time resulting therefrom." The clear language of the policy limits Continental's coverage for indemnification of liability and defense costs for bodily injury occurring *during the policy period*. Thus, the defense costs should be

prorated according to the terms of its policy.

This is essentially a simple insurance contract case requiring us to apply fundamental principles of contract interpretation. *Magnon v. Collins*, 98-2822 (La. 7/7/99), 739 So.2d 191, 196 ("An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911 (La.1/14/94), 630 So.2d 759. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. La.C.C. art.2045."). Because the cost of defending an insured is determined by the contract of insurance, the Court cannot create a bright-line rule prorating defense costs in every case; it must be determined on a case-by-case basis, according to the terms of the contract of insurance.

Because this is exclusively a matter of ***contract*** law, I find the opinion's focus on other courts' analyses concerning indemnification for liability in long latency disease cases involving principles of tort law to be both misplaced and confusing. Accordingly, I concur in the result.

SUPREME COURT OF LOUISIANA

NO. 2015-C-0588

DANIEL ARCENEAUX, LOUIS DAVEREDE, JR.,
VIVES LEMMON AND JULES MENESSES, ET AL.

VERSUS

AMSTAR CORP., AMSTAR SUGAR CORP.,
TATE AND LYLE NORTH AMERICAN SUGARS, INC.,
AND DOMINO SUGAR COMPANY, ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FOURTH CIRCUIT, PARISH OF ST. BERNARD

**Crichton, J., additionally concurs and assigns reasons.**

I agree with the majority opinion in this case. I write separately to point out, as an initial matter, that as we remarked in *Cole v. Celotex Corp.*, 599 So. 2d 1058 (La. 1992), long latency occupational disease cases are "unique," because a distinct body of jurisprudence has been developed which applies solely to them. *Id.* at 1065-66. As a result, I note that the holding of this case should not, as a matter of course, be extended beyond this body of case law.

Additionally, I believe the majority opinion adoption of the pro rata allocation method is mandated here for the several reasons. First, the policy language, in conjunction with the nature of long latency exposure, supports this result, because the policy limits coverage for "bodily injury" to that which occurs "during the policy period." Second, for the reasons explained by the majority, the parties' reasonable expectations are not violated by the application of the pro rata method. Because only injuries "during the policy period" are covered, injuries that occur outside of that period are, by their very nature, not covered. Third, and relatedly, policy considerations favor the adoption of pro rata allocation in this case, particularly insofar as holding otherwise would permit American Sugar to

obtain defense coverage for a period it did not even pay a premium for insurance.