| | | |
|---|---|---|
| STEPHANIE LEWIS | * | NO. 2022-CA-0693 |
| VERSUS | * | |
| | | COURT OF APPEAL |
| STATE NATIONAL | * | |
| INSURANCE COMPANY, INC., | | FOURTH CIRCUIT |
| D/B/A QEO INSURANCE | * | |
| GROUP, DAVID DEGRUY, | | STATE OF LOUISIANA |
| RICHARD'S DISPOSAL, INC., | * * * * * * * | |
| AND STATE FARM MUTUAL | | |
| AUTOMOBILE INSURANCE | | |
| COMPANY (IN ITS CAPACITY | | |
| AS UN-INSURED/UNDER- | | |
| INSURED MOTORIST | | |
| CARRIER) | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-11114, DIVISION "E"
Honorable Omar Mason, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins, Judge Paula A. Brown, Judge Tiffany Gautier Chase, Judge Dale N. Atkins)

**JENKINS, J., CONCURS IN THE RESULT**

Frederic C. Fondren
Joshua L. Davis
MAYHALL FONDREN BLAIZE
1499 St. Charles Street
Houma, LA 70360

  COUNSEL FOR DEFENDANT/APPELLANT, State National Insurance Co.

Ronald L. Wilson
701 Poydras Street, Suite 4100
New Orleans, LA 70139

  COUNSEL FOR DEFENDANT/APPELLEE, Richard's Disposal, Inc.

John W. Waters, Jr.
David E. Walle
BIENVENU FOSTER RYAN & O'BANNON, LLC
1100 Poydras Street, Suite 2870
New Orleans, LA 70163

COUNSEL FOR DEFENDANTS/APPELLEES, David DeGruy and
Richard's Disposal, Inc.

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED**
**MAY 19, 2023**

DNA
RML
PAB
TGC

Defendant-Appellant, State National Insurance Company, Inc. ("State National"), seeks review of the trial court's February 24, 2022 judgment, which granted the Motion for Partial Summary Judgment filed by Defendants-Appellees, Richard's Disposal, Inc. ("Richard's Disposal"), and David DeGruy ("Mr. DeGruy"[1]). For the following reasons, we affirm in part; and we reverse in part and remand for further proceedings consistent with this Opinion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 1, 2017, Stephanie Lewis ("Ms. Lewis") and Mr. DeGruy were involved in a motor vehicle accident in Orleans Parish. Thereafter, on November 17, 2017, Ms. Lewis filed a Petition for Damages ("Petition") in Civil District Court for the Parish of Orleans. Therein, Ms. Lewis named State National, Mr. Degruy, and Richard's Disposal as defendants.[2] In the Petition, Ms. Lewis alleged that at the time of the accident Mr. DeGruy was driving a truck owned by Richard's Disposal when he crashed the truck into her vehicle. She contended that

---

[1] The record shows his name written as "Degruy" and "DeGruy." Because the Appellee Brief uses the latter, this Opinion will also use "DeGruy" throughout.

[2] Though not relevant to this appeal, we note that Ms. Lewis also named State Farm Mutual Automobile Insurance Company (in its capacity as her un-insured/under-insured motorist carrier) as a defendant.

the accident was the result of Mr. DeGruy's negligence. Further, Ms. Lewis contended that at the time of the accident, Mr. DeGruy was in the course and scope of his employment with Richard's Disposal, thereby rendering Richard's Disposal vicariously liable for Mr. DeGruy's actions. Ms. Lewis also asserted, in pertinent part, that at the time of the accident "there was in full force and effect a policy of insurance issued by . . . [State National], under the terms of which it agreed to insure and indemnify the truck owned by [Richard's Disposal] and operated by . . . [Mr. DeGruy] from the harms and losses asserted herein."

Ms. Lewis' First Supplemental and Amended Petition, which she filed on July 16, 2018, contended that Richard's Disposable was negligent for providing Mr. DeGruy with access to company vehicles after having knowingly excluded him from its automobile policy. Additionally, Ms. Lewis argued that Richard's Disposal was negligent for failing to provide a competent driver and for failing to properly hire, train, and supervise Mr. DeGruy.

### RICHARD'S DISPOSAL'S AND MR. DEGRUY'S JANUARY 14, 2022 MOTION FOR PARTIAL SUMMARY JUDGMENT

On January 14, 2022, Richard's Disposal and Mr. DeGruy filed a "Motion for Partial Summary Judgment." Therein, they adopted a portion of a motion for partial summary judgment filed the previous day by Ms. Lewis. In particular, they adopted that portion of her motion for partial summary judgment that asked for a finding that automobile insurance policy #QDX-LA000079-00 (the "Policy"), which State National issued to Richard's Disposal, covered Mr. DeGruy for the subject accident. Additionally, Richard's Disposal and Mr. DeGruy asked for a finding that each is entitled to coverage under the policy and a defense from State National. The relevant exhibits offered in support of their Motion for Partial

Summary Judgment were the Policy; an "Endorsement Excluding Specified Operators" ("Named Driver Exclusion"); the transcript of Mr. DeGruy's October 16, 2019 deposition; and the transcript of the August 5, 2021 deposition by Alvin Richard III ("Mr. Richard III"). Each is discussed in turn.

*The Policy*

Richard's Disposal and Mr. DeGruy offered a copy of the Policy as an exhibit in support of their Motion for Partial Summary Judgment. The Policy listed Richard's Disposal as the named insured and provided that the policy period ran from March 29, 2016, to March 29, 2017. Additionally, the Policy stated, in pertinent part:

**1. Who Is An Insured**

The following are "insureds":

a. You for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

. . . .

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

The lead-in to paragraph 1.b was replaced to read "[a]nyone else while using with your express or implied permission a covered 'auto' you own, hire or borrow . . . ."

*Named Driver Exclusion*

Richard's Disposal and Mr. DeGruy also offered a copy of the Named Driver Exclusion as an exhibit to their Motion for Partial Summary Judgment. This pertained to the policy and stated:

In consideration of the premium charged for the policy to which this endorsement applies, it is agreed that the insurance afforded by this policy shall not apply with respect to any claim arising from accidents

3

which occur while any automobile described in this policy or any other automobile to which the terms of this policy are extended is being driven or operated, either with or without permission of the named insured, by:

1. NAME: David De[G]ruy      AGE:49

The named insured further agrees that the company shall not be liable and no liability or obligation of any kind shall attach to the company for any negligence which may be imputed by law to the named insured arising out of the maintenance, operation or use of a motor vehicle by the person named above.

On July 11, 2017, Simone Richard[3] signed the named driver exclusion on behalf of Richard's Disposal; and a State National agent signed it the same day.

***Mr. DeGruy's October 16, 2019 Deposition***

Additionally, Richard's Disposal and Mr. DeGruy submitted the transcript of Mr. DeGruy's October 16, 2019 deposition in support of their Motion for Partial Summary Judgment. Regarding the day of the subject accident, which was a Sunday, Mr. DeGruy stated that he worked that morning until approximately noon and confirmed that the accident happened around 5:30 p.m. Mr. DeGruy attested that Richard's Disposal owned the 2017 Dodge Ram (the "Vehicle") that he was driving when the accident occurred, and he testified that he used it for "[r]oad calls" and to "pick up parts." At his deposition, Mr. DeGruy explained that he had not had a valid Louisiana driver's license since 2005. However, when asked whether he drove the Vehicle every day up until the date of the accident, Mr. DeGruy answered affirmatively.

Thereafter, the following colloquy occurred regarding Mr. DeGruy's use of the Vehicle involved in the subject accident:

---

[3] Elsewhere in the record, Simone Richard is identified as the Chief Administrative Officer for Richard's Disposal.

4

Q.     Okay. Has anybody told you from Richard's Disposal, and [I am] talking about around the time of the wreck, that you could not drive the [Vehicle]?

A.     I remember Simone [Richard] . . . calling me telling me I need to get with [the Department of Motor Vehicles ("DMV")] because something [was] wrong with my driver's license.

. . . .

Q.     Who is Ms. Simone Richard?

A.     [She is] Mr. Alvin Richard's daughter, the owner.

Q.     The owner is Mr. Alvin Richard?

A.     Junior, yes.

Q.     Okay. And Ms. Simone [Richard] is his daughter?

A.     Right.

Q.     Okay. Does she kind of run operations over there?

A.     Yeah.

. . . .

Q.     [Is she] kind of the top dog, head of the company?

A.     Underneath her brother.

Q.     [Who is] her brother?

A.     Alvin Richard the third.

Q.     Gotcha. Gotcha. Who do you report directly to?

A.     Either Mr. Richard or Alvin Richard the third.

. . . .

Q.     Was that the only conversation you ever had with Ms. Simone [Richard] about that?

A.     No, she called me the next day and she ask[ed] me if I did anything and I said yeah, I went down there. I need to get all these fines and fees paid. She said all right, because the insurance people [will] not carry you. You need to get it done.

5

Q.     Were you driving the [Vehicle] when Ms. Simone [Richard] first told you [that] you needed to go get your license figured out at the DMV?

A.     Yes.

Q.     Did Ms. Simone [Richard] ever say Mr. DeGruy, you cannot drive this [Vehicle] because [there is] a problem with your, your driver's license, [there is] something going on with the insurance so [they are], I know she said, she informed you [there is] an issue --

A.     Right.

Q.     -- but did she ever tell you no, you must not drive this [Vehicle] until we get that figured out?

A.     I [do not] remember[,] but . . . [it is] possible. . . .

Q.     But you still continue[d], regardless of that fact –

A.     Uh-huh (affirmative).

Q.     -- you still continued to drive?

A.     Yes.

Q.     Did she know you drove the [Vehicle] still?

A.     I [do not] know. I [was not], [I am] all outside and I [do not] know. But I just thought everything was good until I get it straight. I [did not] know, you know.

Q.     Who knew you were driving this [Vehicle] on a daily basis, for Richard's [Disposal I am] talking about?

A.     Hum, I mean, [I am] in and out the yard so, I [do not] know. Simone [Richard], she [is] in the office so she . . . [cannot] see [anybody].

Q.     Okay. Is, and your direct supervisors are both Mr. Alvin, second and third?

A.     Yeah.

Q.     Did they ever come tell you [that] you [should not] be driving the [Vehicle] until you get everything taken care of?

A.     Not that I know of. They [did not]. Not that I know of.

. . . .

Q.   Now, [we have] talked about the conversation you had with Ms. Simone [Richard], and her telling you [that] you need to go get your license cleared up. And did I also understand you to say she told you [that] you [were not] supposed to be driving the company vehicles until you got your act, your license sorted out?

A.   Right.

Additionally, Mr. DeGruy summarized a conversation he had with Alvin Richard, Jr., after the accident:

A.   He just told me you know you [should not] have been driving that [Vehicle] . . . .

Q.   You said you know you [should not] have been driving that [Vehicle]. Why did he say that?

A.   Because of my license.

Mr. DeGruy also testified that, prior to the accident, he drove the Vehicle to and from work seven days a week. However, he clarified that he was not the only person to drive the Vehicle because sometimes he had to give up use of the Vehicle if another Richard's Disposal truck was broken and another Richard's Disposal employee required the Vehicle. Further, Mr. DeGruy attested that the keys stayed in the Vehicle.

***Mr. Richard III's August 5, 2021 Deposition***

Also attached to Richard's Disposal's and Mr. DeGruy's Motion for Partial Summary Judgment was the transcript of an August 5, 2021 deposition by Mr. Richard III. Therein, Mr. Richard III explained that Mr. DeGruy worked for Richard's Disposal as a maintenance supervisor in October 2017; and Mr. Richard III stated that he was Mr. DeGruy's direct supervisor. Mr. Richard III also explained that Mr. DeGruy's primary work schedule was Monday through

7

Saturday but that if there was work to be done on a Sunday, then Mr. DeGruy might be assigned to do that work and was, in essence, on call.

Mr. Richard III attested that he did not know that Simone Richard had a conversation with Mr. DeGruy prior to the accident, in which she told him that he could no longer drive company vehicles for insurance reasons until he got his driver's license issues cleared up; however, Mr. Richard III stated that he did not have any involvement with the company's insurance in 2017. When asked "[i]f Ms. Simone [Richard] told Mr. DeGruy he [could not] . . . drive company vehicles because he [did not] have a valid driver's license, is that something that you also had to tell him in order to stop him from driving[,]" Mr. Richard III responded, "No." To that end, Mr. Richard III testified that, prior to the accident, he did not have a conversation with Mr. DeGruy about whether he was allowed to drive a company vehicle or not and about whether or not Mr. DeGruy had a valid driver's license. In fact, Mr. Richard III testified that he did not become aware that Mr. DeGruy lacked a valid driver's license until after the October 1, 2017 accident.

Mr. Richard III responded, "I [do not] know" when asked whether he had seen Mr. DeGruy driving for Richard's Disposal between July 11, 2017, when Simone Richard first had the conversation with Mr. DeGruy about his license issues, and October 1, 2017, the date of the subject accident. Additionally, although Mr. Richard III stated that he was responsible for assigning the company work trucks to supervisors, he was not the one who looked into whether employees had valid driver's licenses. Rather, he explained, Simone Richard was the person to look into whether a supervisor had a valid license and could get a work truck.

Regarding access to the keys for the company vehicles, the following colloquy occurred during Mr. Richard III's deposition:

8

Q.     Who has the keys to these work trucks; is it just the supervisor driving the truck or is there somebody else?

A.     David [DeGruy].

Q.     Mr. DeGruy has access to the keys of all the work trucks?

A.     Yes.

Q.     So when a work truck is assigned to a supervisor, is it his job to make sure that supervisor gets the keys to that work truck?

A.     Yes.

Q.     Did Simone Richard ever tell you, in form or substance, that Mr. DeGruy's keys needed to be taken away?

. . . .

A.     No. I [do not] recall that, sir, no.

Q.     Did Mr. DeGruy have control of and access to all of the keys for all of the work trucks at Richard's Disposal prior to this crash?

A.     Yes.

Mr. Richard III further explained that Richard's Disposal suspended Mr. DeGruy for one year after the October 1, 2017 accident, but rehired Mr. DeGruy following the suspension in his same position because Richard's Disposal "needed him as a mechanic, as maintenance supervisor" and he "[does not] have to drive for that." However, Mr. Richard III also answered affirmatively when asked whether "[i]n order for the supervisor to do parts of their job, they would have to drive that work truck to wherever the job was[.]"

**STATE NATIONAL'S FEBRUARY 14, 2022 OPPOSITION**

Subsequently, on February 14, 2022, State National filed an Opposition to the Motion for Partial Summary Judgment filed by Richard's Disposal and Mr. DeGruy. State National argued that it had no coverage obligation because Mr. DeGruy had been expressly excluded as a driver from the Policy via the Named

Driver Exclusion. Further, State National argued that the Named Driver Exclusion was both valid and enforceable. In pertinent part, State National attached an affidavit by Alvin Richard Jr. ("Mr. Richard Jr.") and an excerpt of the transcript of a deposition given by Simone Richard as exhibits to its Opposition.

### *Mr. Richard Jr.'s April 26, 2019 Affidavit*

In his April 26, 2019 affidavit, Mr. Richard Jr. identified himself as the president of Richard's Disposal. He attested that Richard's Disposal's supervisors and mechanics may use company trucks during the course and scope of their duties and are also permitted to drive company vehicles to and from work. However, Mr. Richard Jr. stated that employees are "prohibited from using [company] vehicles if: (a) they do not possess a valid driver's license, and/or (b) if they have been excluded under the company's policy (ies) of insurance." Further, Mr. Richard Jr. stated that, at the time of the subject accident, Mr. DeGruy had been excluded from operating any of the Richard's Disposal vehicles.

### *Excerpt of Simone Richard's August 5, 2021 Deposition*

During her August 5, 2021 deposition, Simone Richard explained that when she signed the Named Driver Exclusion, she did so after State National informed her that it would cancel Richard's Disposal's insurance because Mr. DeGruy did not have a valid driver's license. She testified that she knew Mr. DeGruy did not have a valid driver's license prior to this though and "had been working with [Mr. DeGruy] to tell him to get his driver's license and that he could not drive until he showed [her] a valid driver's license."

In particular, Simone Richard explained her conversation(s) with Mr. DeGruy as follows:

Q. Okay. And did you inform Mr. DeGruy that it was your information that he had an invalid or he did not have a valid driver's license?

A. Yes.

Q. And did he understand this?

A. Yes.

Q. And did he communicate that understanding to you?

A. Yes.

Q. And as a result, you told him that he could not drive a Richard's Disposal company vehicle without being a valid licensed driver, correct?

A. Yes.

Q. And you also told him -- and he agreed to this, did he not?

A. Yes.

. . . .

Q. Because you [did not] think that he would be driving?

A. Right.

Q. Because you expressly told him that he could not?

A. Correct.

Simone Richard further explained that she informed Mr. DeGruy in a text message on July 11, 2017, which was the same day she signed the Named Driver Exclusion, that she had to remove him from the Policy if he had not gotten his driver's license issues cleared up. She testified that Mr. DeGruy responded "just remove me[;]" that he would clear up the driver's license issues in two weeks; and that he would ride with someone else or use his personal vehicle in the meantime. Simone Richard also stated that she told Mr. DeGruy in text messages that he was "not covered to drive until" he cleared up his driver's license issues.

11

*FEBRUARY 24, 2022 JUDGMENT*

After a hearing on Richard's Disposal's and Mr. DeGruy's Motion for Partial Summary Judgment on February 17, 2022, the trial court subsequently rendered a written judgment on February 24, 2022, which stated, in pertinent part:

> IT IS ORDERED, ADJUDGED AND DECREED that the Motion for Partial Summary Judgment is **GRANTED**, and judgment is rendered in favor of Richard's Disposal, Inc.[,] and David DeGruy, and against State National Insurance Company finding the named driver exclusion in State National's policy #QDX-LA000079-00 cannot be enforced, the claims asserted in this case by plaintiff, Stephanie Lewis, against Richard's Disposal, Inc.[,] and David DeGruy are covered by State National's policy, and State National owes Richard's Disposal, Inc.[,] and David DeGruy each a defense and indemnity under the terms of that policy.

After the trial court rendered the February 24, 2022 judgment, State National filed a Motion to Reform Judgment on April 8, 2022, therein requesting that the trial court reform the February 24, 2022 judgment to contain the proper decretal language so as to constitute a final judgment. The trial court granted the Motion to Reform Judgment; and State National timely followed a Motion for Devolutive Appeal.

## ASSIGNMENTS OF ERROR

On appeal, State National raises three assignments of error:

1. The trial court erred by finding, on summary judgment, that [Mr.] De[G]ruy was a covered driver, because he can only be covered if he had permission to drive a company vehicle, and there is abundant testimony that he did not have permission.

2. The trial court erred by using [La.] R.S. 32:900(B)(2)(d) to invalidate the exclusion of [Mr.] De[G]ruy as a covered driver, because there is a genuine issue of material fact regarding if [Mr.] De[G]ruy had permission to operate the vehicle.

3. Even if [La.] R.S. 32:900(B)(2)(D) applied, summary judgment was inappropriate.

Because this appeal concerns a motion for summary judgment, we begin our discussion by summarizing the principles applicable to the summary judgment procedure.

## DISCUSSION

### *SUMMARY JUDGMENT PRINCIPLES*

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . ." La. C.C.P. art. 966(A)(2). It "is favored and shall be construed to accomplish these ends." *Id. See also Citron v. Gentilly Carnival Club, Inc.*, 2014-1096, p. 10 (La. App. 4 Cir. 4/15/15), 165 So.3d 304, 311-12. "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

"An appellate court applies the *de novo* standard of review in examining the trial court's ruling on a motion for summary judgment and utilizes 'the same criteria that govern the trial court's determination of whether summary judgment is appropriate.'" *Jones v. Boot Bar & Grill*, 2022-0154, p. 12 (La. App. 4 Cir. 10/5/22), 350 So.3d 968, 978 (quoting *Knox v. Elite Prot. Sols. & Willie's Chicken Shack, LLC*, 2021-0419, p. 9 (La. App. 4 Cir. 10/13/21), ___ So.3d ___, ___, 2021 WL 4771758, at *4). "Thus, appellate courts ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law." *Id.* (quoting *Hood v. Cotter*, 2008-0215, 0237, p. 9 (La. 12/2/08), 5 So.3d 819, 824).

13

On a motion for summary judgment, "[t]he burden of proof rests with the mover." La. C.C.P. art. 966(D)(1). "The party seeking summary judgment has the burden of proving there is no genuine issue of material fact." *Jones*, 2022-0154, p. 12, 350 So.3d at 978 (citing *Suire v. Lafayette City-Par. Consol. Gov't*, 2004-1459, 1460, 1466, pp. 26-27 (La. 4/12/05), 907 So.2d 37, 56). "If the movant satisfies the initial burden, the burden shifts to the party opposing summary judgment to present factual support sufficient to show he will be able to satisfy the evidentiary burden at trial." *Id.* at pp.12-13, 350 So.3d at 978-79; *see also La. High Sch. Athletics Ass'n, Inc. v. State*, 2012-1471, p. 18 (La. 1/29/13), 107 So.3d 583, 598.

"However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather, to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Jones*, 2022-0154, p. 13, 350 So.3d at 979 (quoting *Knox*, 2021-0419, p. 9, ___ So.3d at ___, 2021 WL 4771758, at *5). *See also* La. C.C.P. art. 966(D)(1). "It is only after the motion has been made and properly supported that the burden shifts from the mover to the non-moving party." *Id.* (quoting *Knox*, 2021-0419, p. 10, ___ So.3d at ___, 2021 WL 4771758, at *5). Thereafter, "the adverse party [must] produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1). "The adverse party may not rely on mere allegations or denials to defeat a motion for summary judgment but must provide specific facts showing that a genuine issue remains for trial, and failure to do so will result in the rendering of the summary judgment." *Jones,*

2022-0154, p. 13, 350 So.3d at 979 (citing La. C.C.P. art. 967(B)). "'[I]f the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact' and summary judgment is appropriate." *Jones*, 2022-0154, p. 13, 350 So.3d at 979 (quoting *Knox*, 2021-0419, pp. 9-10, ___ So.3d at ___, 2021 WL 4771758, at *5).

In considering a motion for summary judgment, the trial court cannot make credibility determinations but must construe reasonable factual inferences in favor of the party opposing the motion, resolving all doubt in favor of the opponent. *Citron*, 2014-1096, p. 12, 165 So.3d at 312 (quoting *Hutchinson v. Knights of Columbus, Council No. 5747*, 2003-1533, p. 8 (La. 2/20/04), 866 So.2d 228, 234; *Willis v. Medders*, 2000-2507, p. 2 (La. 12/8/00), 775 So.2d 1049, 1050). "A genuine issue is a triable issue." *Jones*, 2022-0154, p. 14, 350 So.3d at 979 (quoting *Knox*, 2021-0419, p. 10, ___ So.3d at ___, 2021 WL 4771758, at *5). "More precisely, an issue is genuine if reasonable persons could disagree." *Id.* "However, '[i]f on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue.'" *Id.* (alteration in original). "A fact is material when its existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery." *Id.* "Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *Id.* "Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of [the] substantive law applicable to the case." *Id.* Thus, in order to determine whether the trial court's grant of

summary judgment was proper in the matter *sub judice*, we must analyze the applicable substantive law regarding insurance policies and exclusions.

We will address State National's assignments of error in turn.

***Assignment of Error Number One: Whether the trial court erred by finding, on summary judgment, that Mr. DeGruy had permission to drive the vehicle and was a covered driver***

In its first assignment of error, State National asserts that "[t]he trial court erred by finding, on summary judgment, that [Mr.] De[G]ruy was a covered driver, because he can only be covered if he had permission to drive a company vehicle, and there is abundant testimony that he did not have permission." As excerpted previously, the policy stated:

**1. Who Is An Insured**

> The following are "insureds":
> a. You for any covered "auto".
>
> b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
>
> . . . .
>
> c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

The lead-in to paragraph 1.b was replaced to read "[a]nyone else while using with your *express or implied permission* a covered 'auto' you own, hire or borrow . . . ." (Emphasis added.) Thus, per the terms of the Policy, Mr. DeGruy was a covered driver under the Policy if he had express or implied permission from Richard's Disposal to drive the Vehicle.

As this Court has explained, the above Policy provisions constitute an "omnibus clause," defined as "a clause in an automobile insurance policy which extends the term 'insured' to include the named insured and also includes any other

person while using the vehicle provided the actual use of the vehicle is by the named insured or with his permission or consent." *Mercadel v. Tran*, 1992-0798 (La. App. 4 Cir. 03/29/94), 635 So.2d 438, 440 (citing 12 GEORGE J. COUCH, COUCH CYCLOPEDIA OF INSURANCE LAW 616 (2nd ed. 1981)). "[P]ermission, either express or implied, is a fact that must be proven for coverage to attach under an omnibus clause." *Id.* "Implied permission arises from a course of conduct by the named insured involving acquiescence in, or lack of objection to, the use of the vehicle." *Barton v. U.S. Agencies Cas. Ins. Co.*, 41,950, p. 6 (La. App. 2 Cir. 2/7/07), 948 So.2d 1267, 1271 (citing *Manzella v. Doe*, 1994-2854, p. 6 (La. 12/8/95), 664 So.2d 398, 402). That is, "a feeble, verbal attempt . . . in light of . . . plainly permissive conduct" constitutes implied permission. *Turner v. Alexander*, 29,148, p. 4 (La. App. 2 Cir. 2/26/97), 690 So.2d 756, 758. Implied permission "is determined from the named insured's conduct" and "requires reviewing all facts and circumstances." *Francois v. Alexander*, 1999-1760, p. 3 (La. App. 3 Cir. 4/5/00), 771 So.2d 656, 659 (citing *Manzella*, 1994-2854, p. 6, 664 So.2d at 402; *Wolfe v. Emp'rs Commercial Union Ins. Co.*, 272 So.2d 714, 715 (La. App. 3rd Cir.1973)).

Turning to the facts of the matter *sub judice*, in her August 5, 2021 deposition, Simone Richard testified that she informed Mr. DeGruy prior to the subject accident that he could not drive a Richard's Disposal vehicle unless and until he resolved his driver's license issues, i.e., that he did not have express permission to drive the Vehicle. Based on her deposition testimony, Simone Richard and Mr. DeGruy had this conversation at least twice prior to the subject accident, including once in writing via text messages. However, during his deposition, Mr. DeGruy recalled the conversations with Simone Richard about his

driver's license issues but responded, "I [do not] know" when asked whether Simone Richard specifically informed him that he could not drive the Vehicle until he resolved his driver's license issues.

Moreover, the course of conduct by Richard's Disposal indicates that there may have been "acquiescence in, or lack of objection to, the use of the [V]ehicle" by Mr. DeGruy. Though Mr. Richard III testified that Mr. DeGruy's job as a maintenance supervisor did not require Mr. DeGruy to drive, Mr. DeGruy testified that he used the Vehicle for "[r]oad calls" and to "pick up parts." Both Mr. Richard III's and Mr. DeGruy's respective deposition testimonies reveal that Mr. DeGruy had access to the keys to the Vehicle. In fact, Mr. Richard III stated that, prior to the subject accident, Mr. DeGruy had access to the keys for all of the Richard's Disposal vehicles and that Simone Richard never informed Mr. Richard III to remove Mr. DeGruy's access to the keys. Further, none of the evidence indicates that Richard's Disposal changed Mr. DeGruy's job duties or restricted his access to the keys after the conversations between Simone Richard and Mr. DeGruy. While Mr. DeGruy could not say for certain that Simone Richard, Mr. Richard Jr., or Mr. Richard III saw him driving the vehicle between the time of his conversation with Simone Richard and the date of the subject accident, he testified that he drove the Vehicle nearly every day, unless another employee had to use it because another company vehicle was out of service. To this end, we also note Mr. Richard III's testimony that he was the one who assigned the company vehicles to the supervisors, thus indicating that Mr. Richard III knew or should have known who was driving the company vehicles.

Considering the foregoing, we find that there remains a genuine issue of material fact as to whether Mr. DeGruy had permission to use the Vehicle and that

summary judgment is inappropriate at this time. We agree with State National's first assignment of error that the trial court erred by finding, on summary judgment, that Mr. DeGruy had permission to drive the Vehicle and was a covered driver under the Policy. Therefore, we reverse the trial court's February 24, 2022 judgment insofar as the trial court concluded that Ms. Lewis' claims against Richard's Disposal and Mr. DeGruy are covered by the Policy to the extent that those claims are based on Mr. DeGruy having had permission to drive the Vehicle. However, we must next turn our discussion to two other aspects of the trial court's February 24, 2022 judgment, namely the trial court's conclusion that State National owes a duty to defend and a duty to indemnify Richard's Disposal and Mr. DeGruy under the terms of the Policy.

### *WHETHER STATE NATIONAL OWES A DUTY TO DEFEND*

In its February 24, 2022 judgment, the trial court also concluded that State National owes Richard's Disposal and Mr. DeGruy a defense. In their Appellee Brief to this Court, Richard's Disposal and Mr. DeGruy contend that the trial court was correct in ruling that State National has a duty to defend them, asserting that "[w]hether Mr. DeGruy had express[] or implied permission, or was in the course and scope of his employment with Richard's [Disposal] is irrelevant to State National's duty [to] defend." Thus, as part of our *de novo* review of the trial court's grant of the Motion for Summary Judgment we consider whether State National owes a duty to provide Richard's Disposal and Mr. DeGruy with a defense.

The duty to defend is a contractual obligation between the insurer and the insured per the insurance policy. *Choice Found.*, 2021-0431, p. 4, 336 So.3d at 505 (quoting *Arceneaux v. Amstar Corp.*, 2015-0588, p. 12 (La. 9/7/16), 200 So.3d 277, 286). The insurer's "duty to defend is broader than the duty to indemnify." *Id.*

19

at pp. 4-5, 336 So.3d at 505 (quoting *Spencer v. Chevron Corp.*, 2016-0174, p. 7 (La. App. 4 Cir. 9/28/16), 202 So.3d 1055, 1059). Only "[w]hen uncontroverted facts preclude the possibility of a duty to indemnify," does "the duty to defend cease[] and the duty to indemnify is negated." *Hoffpauir v. Cajundome Comm'n*, 202-0423, p. 7 (La. App. 3 Cir. 4/21/21), 318 So.3d 334, 339 (quoting *Maldonado v. Kiewit La. Co.*, 2013-756, 757, pp. 11-12 (La. App. 1 Cir. 3/24/14), 146 So.3d 210, 218-19).

The duty to defend in a civil action is determined by application of the "eight-corners rule." *Choice Found.*, 2021-0431, p. 4, 336 So.3d at 505 (quoting *Plaia v. Stewart Enters., Inc.*, 2014-0159, p. 35 (La. App. 4 Cir. 10/26/16), 229 So.3d 480, 504). This Court has explained the eight-corners rule:

> [A]n insurer must look to the "four corners" of the plaintiff's petition and the "four corners" of its policy to determine whether it owes that duty. *Vaughn v. Franklin*, [20]00-0291, p. 5 (La. App. 1 Cir. 3/28/01), 785 So.2d 79, 84. Under this analysis, the factual allegations of the plaintiff's petition must be liberally interpreted to determine whether they set forth grounds which raise even the possibility of liability under the policy. *Id.* In other words, the test is not whether the allegations unambiguously assert coverage, but rather whether they do not unambiguously exclude coverage. *Id.* Similarly, even though a plaintiff's petition may allege numerous claims for which coverage is excluded under an insurer's policy, a duty to defend may nonetheless exist if there is at least a single allegation in the petition under which coverage is not unambiguously excluded. [*Emps.*] *Ins. Representatives, Inc. v.* [*Emp'rs*] *Reinsurance Corp.*, [19]94-0676, p. 3 (La. App. 1 Cir. 3/3/95), 653 So.2d 27, 29.

*Mossy Motors, Inc. v. Cameras Am.*, 2004-0726, p. 6 (La. App. 4 Cir. 3/2/05), 898 So.2d 602, 606. Only "[i]f a petition does not allege facts within the scope of coverage" is "an insurer . . . not legally required to defend a suit against its insured." *Choice Found.*, 2021-0431, p. 5, 336 So.3d at 505 (alteration in original) (quoting *Spencer*, 2016-0174, p. 8, 202 So.3d at 1059). Thus, to resolve whether

20

State National has a duty to defend Richard's Disposal and Mr. DeGruy, we must consider the language of the Policy and Ms. Lewis' Petition.

As we summarized earlier in this Opinion, Ms. Lewis' Petition alleged negligence on the part of Mr. DeGruy, who was driving the Richard's Disposal Vehicle at the time of the accident. Further, Ms. Lewis alleged in her Petition that Mr. DeGruy was in the course and scope of his employment with Richard's Disposal at the time of the accident and that, as a result, Richard's Disposal was vicariously liable for Mr. DeGruy's actions. In her First Supplemental and Amended Petition, Ms. Lewis asserted independent bases of negligence against Richard's Disposal, namely for failing to provide a competent driver; for failing to properly hire, train, and supervise Mr. DeGruy; and for providing Mr. DeGruy with access to company vehicles after knowingly having excluded him from the policy. Also, as excerpted previously, the policy stated:

**1. Who Is An Insured**

The following are "insureds":
a. You for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

. . . .

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

The lead-in to paragraph 1.b was replaced to read "Anyone else while using with your express or implied permission a covered 'auto' you own, hire or borrow except . . . ." Accordingly, the Policy provided coverage for Richard's Disposal and anyone who had Richard's Disposal's express or implied permission to drive a covered vehicle.

The Petition alleges negligence on the part of Mr. DeGruy. We have already held that there remains a genuine issue of material fact as to whether Mr. DeGruy had permission to drive the Vehicle and, by extension, whether the Policy covered him. Given our holding, which results in the potential for Mr. DeGruy to be covered by the Policy depending upon the ultimate resolution of the permission issue by the trier of fact, we cannot say that the allegations of the Petition unambiguously exclude coverage for Mr. DeGruy. Additionally, the Policy provided coverage for Richard's Disposal as the named insured and the Petition and the First Supplemental and Amended Petition assert negligence on the part of Richard's Disposal insofar as alleging that Mr. DeGruy was in the course and scope of his employment with Richard's Disposal at the time of the accident; Richard's Disposal was negligent in its hiring of Mr. DeGruy; and Richard's Disposal was negligent in failing to properly train and supervise Mr. DeGruy. Thus, we conclude that the allegations of the Petition do not unambiguously exclude coverage for Richard's Disposal.

Therefore, State National has a duty to defend both Richard's Disposal and Mr. DeGruy under the eight-corners rule. We affirm this part of the trial court's judgment.

### *WHETHER STATE NATIONAL OWES A DUTY TO INDEMNIFY*

The trial court also concluded in its February 24, 2022 judgment that State National owes Richard's Disposal and Mr. DeGruy indemnity under the Policy. As mentioned previously, the duty to defend is broader than the duty to indemnify. The duty to indemnify is the insurer's "obligation to provide coverage for damage claims." *Arceneaux*, 2015-0588, p. 5, 200 So.3d at 281 (citing *Elliott v. Cont'l Cas. Co.*, 2006-1505, p. 5 (La. 2/22/07), 949 So.2d 1247, 1250). "[T]he insurer's duty to

indemnify" pertains to "a covered claim after judgment against the insured in the underlying liability case." *Brilliant Nat'l Servs., Inc. v. Travelers Indem. Co.*, 2021-1471, p. 5 (La. App. 1 Cir. 9/7/22), 349 So.3d 581, 585 (citing *Elliott*, 2006-1505, p. 5, 949 So.2d 1247). Accordingly, "[t]he resolution of the issue of [the insurer]'s duty to indemnify [the insured] will necessarily depend on the disposition of the merits . . . . " *Motorola, Inc. v. Associated Indem. Corp.*, 2002-0716, p. 21 (La. App. 1 Cir. 6/25/04), 878 So.2d 824, 837. As we have concluded, there remains a genuine issue as to the permission issue and whether Mr. DeGruy is even covered by the Policy; and the trial court has not yet disposed of the merits and rendered judgment against Richard's Disposal and Mr. Degruy in Ms. Lewis' underlying liability case. Therefore, given the issues of fact that remain and the stage of the proceedings, we conclude that the trial court erred in concluding that State National owes a duty to indemnify Richard's Disposal and Mr. DeGruy. We reverse that portion of the trial court's judgment and remand for further proceedings consistent with this Opinion.

***Assignment of Error Number Two: Whether the trial court erred by invalidating the Named Driver Exclusion based on La. R.S. 32:900(B)(2)(d)***

In its February 24, 2022 judgment, the trial court concluded, in pertinent part, that the named driver exclusion in State National's Policy cannot be enforced and that Ms. Lewis' claims against Richard's Disposal and Mr. DeGruy are covered by State National's Policy. Regarding this conclusion, in its second assignment of error, State National asserts, in part, that "[t]he trial court erred by using [La.] R.S. 32:900(B)(2)(d) to invalidate the exclusion of [Mr.] De[G]ruy as a covered driver . . . ." In their Appellee Brief, Richard's Disposal and Mr. DeGruy

counter that the Named Driver Exclusion is not enforceable due to its non-compliance with La. R.S. 32:900(B)(2)(d).

We begin by noting that although an insurer can limit its liability if, in so doing, this does not result in a conflict with statutory provisions or public policy, the insurer bears the burden of proof if it claims that a loss falls within a policy exclusion. *Choice Found v. Law Indus., LLC*, 2021-0431, p. 4 (La. App. 4 Cir. 3/2/22), 336 So.3d 501, 505 (quoting *Perniciaro v. McInnis*, 2018-0113, p. 10 (La. App. 4 Cir. 9/7/18), 255 So.3d 1223, 1231). "[A] provision which seeks to narrow the insurer's obligation is strictly construed against the insurer . . . ." *Reynolds v. Select Props.*, 1993-1480 (La. 04/11/94), 634 So.2d 1180, 1183 (citing *Garcia v. St. Bernard Sch. Bd.*, 576 So.2d 975, 976 (La. 1991); *Breland v. Schilling*, 550 So.2d 609, 610 (La. 1989)).

In the present case, State National and Richard's Disposal executed the alleged policy exclusion at issue herein (the Named Driver Exclusion) pursuant to La. R.S. 32:900. Louisiana Revised Statutes 32:900 is part of "[t]he Louisiana Motor Vehicle Safety Responsibility Law," which "sets forth a mandatory, comprehensive scheme to protect the public from damage caused by motor vehicles." *Bryant v. United Servs. Auto. Ass'n*, 2003-3491, 2004-0028, p. 7 (La. 9/9/04), 881 So.2d 1214, 1218 (citing *Adams v. Thomas*, 1998-2003, pp. 3-4 (La. 4/13/99), 729 So.2d 1041, 1043; *Simms v. Butler*, 1997-0416, p. 2 (La. 12/2/97), 702 So.2d 686, 687). Further, La. R.S. 32:900 is titled "'Motor Vehicle Liability Policy' defined" and, regarding commercial or business policies like the one in the matter *sub judice*, it provides, in pertinent part:

> A. A "Motor Vehicle Liability Policy" as said term is used in this Chapter, shall mean an owner's or an operator's policy of liability insurance . . . and issued . . . by an insurance carrier duly authorized to

24

transact business in this state, to or for the benefit of the person named therein as insured.

B. Such owner's policy of liability insurance:

. . . .

(2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicle or motor vehicles . . . subject to limits exclusive of interest and costs with respect to each such motor vehicle as follows:

. . . .

(d) An owner may exclude a named person as an insured under a commercial policy *if the owner obtains and maintains in force another policy of motor vehicle insurance* which provides coverage for the person so excluded which is equal to that coverage provided in the policy for which the person was excluded. The alternative coverage is required for both primary and excess insurance.

(Emphasis added.) In interpreting La. R.S. 32:900(B)(2)(d), the Louisiana Third Circuit Court of Appeal has held that a named driver exclusion is not enforceable if no other coverage is secured for the named driver that has been so excluded. *Bouttee v. Fireman's Fund County Mut. Ins. Co.*, 2006-0034, pp. 15-16 (La. App. 3 Cir. 5/10/06), 930 So.2d 305, 315.

Our de novo review establishes the disputed facts regarding permission preclude summary judgment. The applicability of La. R.S. 32:900(B)(2)(d) and its mandate to provide alternative coverage for excluded drivers hinges upon the excluded driver having express or implied permission to use the vehicle. Louisiana Revised Statute 32:900(B) provides, in pertinent part:

Such owner's policy of liability insurance:[…][s]hall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles **with the express or implied permission of such named insured** against loss […] arising out of

[…] use of such motor vehicle […], subject to limits exclusive of interest and costs with respect to each such motor vehicle as follows:

…

(d) An owner may exclude a named person as an insured under a commercial policy if the owner obtains and maintains in force another policy of motor vehicle insurance which provides coverage for the person so excluded which is equal to that coverage provided in the policy for which the person was excluded.

(Emphasis added).

The statute, read as a whole, mandates coverage — in the absence of alternative coverage — to excluded drivers only when the excluded driver has the express or implied permission of the named insured. Having previously determined that there are genuine factual disputes as to whether Mr. DeGruy had expressed or implied permission to use the vehicle, these factual disputes regarding permission also preclude summary judgment finding that La. R.S. 32:900(B) applies. Absent undisputed facts regarding whether Mr. DeGruy had express or implied permission to use the vehicle, the applicability of La. R.S. 32:900(B)(2)(d) is uncertain. As a result of these factual disputes, summary judgment on the enforceability of the named driver exclusion is premature. Therefore, we reverse the trial court's February 24, 2022 judgment insofar as the trial court concluded that the named driver exclusion in State National's Policy cannot be enforced and that Ms. Lewis' claims against Richard's Disposal and Mr. DeGruy are covered by State National's Policy. Having so concluded, as to State National's first and second assignments of error, we pretermit discussion of State National's third assignment of error.

### DECREE

For the foregoing reasons, we reverse that portion of the trial court's February 24, 2022 judgment finding that the Named Driver Exclusion cannot be enforced; reverse that portion of the judgment ruling that the claims asserted by

26

Ms. Lewis are covered by the Policy and remand for further proceedings consistent with this Opinion regarding the issue of permission. Further, we affirm that portion of the judgment holding that State National has a duty to defend Richard's Disposal and Mr. DeGruy; and reverse that portion of the judgment holding that State National has a duty to indemnify Richard's Disposal and Mr. DeGruy and remand for further proceedings consistent with this Opinion.

**AFFIRMED IN PART; REVERSED IN PART AND REMANDED**